
ORIGINAL

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| United States of America,<br><br>      Plaintiff,<br><br>v.<br><br>D-1 TARA LYNN LEE,<br><br>      Defendant. | No. 19-20128<br><br>Hon. Bernard A. Friedman<br><br>**Offense:**<br>18 U.S.C. § 1343<br>(wire fraud)<br><br>**Maximum Penalty:**<br>20 years<br><br>**Maximum Fine:**<br>Not to exceed $250,000<br><br>**Supervised Release:**<br>Up to 3 years |

_____/

# Rule 11 Plea Agreement

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, defendant

Tara Lynn Lee and the government agree as follows:

1.  **Guilty Plea**

    A.  **Count of Conviction**

    Defendant will enter a plea of guilty to Counts Four and Five of the

Indictment, which charge her with wire fraud, in violation of 18 U.S.C. § 1343.

B.    **Elements of Offense**

The elements of wire fraud are as follows:

*First,* the defendant devised a scheme to defraud or to obtain money and property by materially false or fraudulent pretenses, representations, or promises;

*Second,* the defendant acted with the intent to defraud; and

*Third,* in advancing, furthering, or carrying out the scheme, the defendant caused the transmission of a signal of some kind by means of a wire communication in interstate commerce.

C.    **Factual Basis for Guilty Pleas**

The following facts are a sufficient and accurate basis for defendant's guilty pleas:

Beginning in approximately 2014 and continuing through approximately November 2018, in the Eastern District of Michigan and elsewhere, the defendant, TARA LYNN LEE, knowingly executed and attempted to execute a scheme to defraud people seeking to adopt children, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises.

As part of the scheme, LEE made false representations to people seeking to adopt children so that they would send her payment for her services, as well as payment intended to reimburse the birth mother's expenses. By facilitating adoptions, LEE was violating prior orders from the Michigan Department of

- 2 -

Health and Human Services, Bureau of Children and Adult Licensing. LEE agrees that, for sentencing purposes, she will be held accountable for causing a loss of at least $250,000. LEE also acknowledges that her scheme involved more than ten victims, that her victims were vulnerable, that her conduct resulted in substantial financial hardship to five or more victims, that she used sophisticated means to conduct her scheme, and that that she had an aggravating role in the offense.

Specifically related to Counts Four and Five of the Indictment, Lee admits that:

**False Representations Regarding Birth Mother "RaShaunda"**

In or about February 2018, LEE sent information about a birth mother named "RaShaunda" to her network of adoption contacts. The opportunity included a photograph of RaShaunda, said that she was pregnant with a baby boy with an estimated due date of June 30, 2018. The information contained in the RaShaunda opportunity was false; in truth and in fact, no birth mother named RaShaunda had asked LEE to find adoptive parents for her child. Prospective adoptive parent E.T. responded to the opportunity, and told LEE that she was interested in adopting RaShaunda's baby.

On or about February 25, 2018, LEE called E.T. and falsely told her that RaShaunda had chosen her and her husband, C.T., to adopt her baby. On or about

February 26, 2018, E.T. paid LEE $15,000 by providing her with credit card information over the phone.

From February to June 2018, LEE communicated with E.T. through text messages and phone conversations. LEE gave E.T. false information about RaShaunda and her pregnancy. Specifically, on April 26, 2018, LEE sent E.T. a text message that contained an ultrasound photograph that she falsely represented was RaShaunda's baby. On June 2, 2018, LEE sent E.T. a text message that stated: "Let's schedule a call for Tuesday to talk about birth plans. Your baby is due this month!!!"

On or about June 12, 2018, LEE called E.T. and told her that RaShaunda had been shot and killed and that her baby had died. This was false. LEE made up this story because RaShaunda did not exist.

2.  **Sentencing Guidelines**

    A.  **Standard of Proof**

    The Court will find sentencing factors by a preponderance of the evidence.

    B.  **Agreed Guideline Range**

    There are no sentencing guideline disputes. Except as provided below, the defendant's guideline range is 97 to 121 months, as set forth on the attached worksheets. If the Court finds:

1. That defendant's criminal history category is higher than reflected on the attached worksheets, or

2. that the offense level should be higher because, after pleading guilty, defendant made any false statement to or withheld information from her probation officer; otherwise demonstrated a lack of acceptance of responsibility for her offense; or obstructed justice or committed any crime,

and if any such finding results in a guideline range higher than 97 to 121 months, the higher guideline range becomes the **agreed range**. However, if the Court finds that defendant is a career offender, an armed career criminal, or a repeat and dangerous sex offender as defined under the sentencing guidelines or other federal law, and that finding is not already reflected in the attached worksheets, this paragraph does *not* authorize a corresponding increase in the agreed range.

Neither party may take a position concerning the applicable guidelines that is different than any position of that party as reflected in the attached worksheets, except as necessary to the Court's determination regarding subsections a), b), and c), above.

## C.    Relevant Conduct

The relevant conduct in this case includes the following:

**Jane Doe 1: Double Match**

In or about February 2018, LEE sent information about birth mother Jane Doe 1 to her network of adoption contacts. The opportunity included photographs of Jane Doe 1 and her children, and said that she was pregnant with a baby girl with an estimated due date of July 3, 2019.

In or about February 2018, LEE told two sets of prospective adoptive parents—M.S. and J.S., and M.E. and J.E.—that Jane Doe 1 had chosen them to adopt her child. LEE requested and received payment from both sets of parents. On or about February 19, 2018, M.S. and J.S. paid LEE $19,000 by giving LEE their credit card information over the phone. On or about February 21, 2018 and February 23, 2018, M.E. and J.E. paid LEE $20,000 by giving her their credit card information over the phone.

From March to June 2018, LEE communicated with M.S./J.S. and M.E./J.E. through text messages and phone conversations. LEE gave both sets of prospective adoptive parents occasional updates about Jane Doe 1 and her pregnancy.

On or about July 1, 2018, LEE called M.E. and J.E. and told them that their adoption had failed because Jane Doe 1 had delivered her baby without telling LEE, and that Jane Doe 1 had decided not to place her child into adoption. LEE presented M.E. and J.E. with other adoption opportunities, and told them that the money they had paid would "roll over" to another adoption.

On or about July 1, 2018, M.S. and J.S. left Colorado and began traveling to Michigan. They arrived in Michigan on or about July 3, 2018. On or about July 7, 2018, LEE told M.S. and J.S. that the adoption had failed, and that Jane Doe 1 had decided not to place her baby into adoption. LEE told M.S. and J.S. about another birth mother opportunity.

**Enhelica Wiggins: Double Match**

In or about April 2018, LEE sent information about birth mother Enhelica Wiggins to her network of adoption contacts. The opportunity included photographs of Wiggins's first name, and said that the sex of the baby was unknown because Wiggins was only six weeks pregnant. The opportunity stated that Wiggins's estimated due date was December 17, 2018.

In or about April 2018, LEE told two sets of prospective adoptive parents— L.C. and J.C., and M.J. and N.J.—that Wiggins had chosen them to adopt her child. LEE requested and received payment from both sets of parents. On or about April 27, 2018, May 1, 2018, and May 5, 2018, J.C. and L.C. paid LEE a total of $33,000 by providing her with credit card numbers over the phone. On or about April 30, 2018, N.J. paid LEE $25,000 by providing her with credit card numbers over the phone.

From April to November 2018, LEE communicated with L.C./J.C. and M.J./N.J. through text messages and phone conversations. LEE gave both sets of prospective adoptive parents occasional updates about Wiggins and her pregnancy.

**Jane Doe 3: Double Match**

In or about June 2018, LEE sent information about birth mother Jane Doe 3 to her network of adoption contacts. The opportunity included a photograph of Jane Doe 3, stated that the baby's sex was unknown, and said that Jane Doe 3's estimated due date was November 8, 2018.

In or about June 2018, LEE told two sets of prospective adoptive parents—C.L. and J.L., and S.G. and B.G.—that Jane Doe 3 had chosen them to adopt her child. LEE requested and received payment from both sets of parents. On or about June 16, 2018, B.G. paid LEE $12,000 by providing her with credit card numbers over the phone. On or about June 18, 2018, J.L. paid LEE $18,000 by providing her with credit card numbers over the phone.

In truth and in fact, Jane Doe 3 was not pregnant in 2018. She did not tell LEE that she was pregnant in 2018.

**Jane Doe 4: Double Match**

In or about July 2018, LEE sent information about birth mother Jane Doe 4 to her network of adoption contacts. The opportunity stated that Jane Doe 4 was expecting a baby boy in December 2018.

In or about July 2018, LEE told two sets of prospective adoptive parents—

S.M. and P.M. and J.L.2 and E.L.— that Jane Doe 4 had chosen them to adopt her

child. LEE requested and received payment from both sets of parents. On or about

July 4, 2018, S.M. and P.M. paid LEE $17,000 by providing her with credit card

numbers over the phone.  On or about July 22, 2018, E.L. and J.L.2 paid LEE

$17,000 by providing her with credit card numbers over the phone.

**Jane Doe 5: Fraudulent Match**

In or about September 2018, LEE sent information about birth mother Jane

Doe 5 to her network of adoption contacts. The opportunity said that Jane Doe 5

had an estimated due date of March 6, 2019, and that Jane Doe 5 had come to LEE

"as a referral from another expectant mother."

In or about September 2018, LEE told prospective adoptive parents J.B. and

M.B. that Jane Doe 5 had chosen them to adopt her baby. LEE requested and

received payment from J.B. and M.B. On or about September 29, 2018, J.B. and

M.B. paid LEE $15,000 by providing her with their credit card numbers over the

phone.

In truth and in fact, prior to accepting payment from M.B. and J.B., LEE had

never met with Jane Doe 5, had not confirmed that she was pregnant, and had not

determined that Jane Doe 5 wanted to work with LEE to place her child into

adoption.

**Jane Doe 6: Fraudulent Matches**

In or about October 2018, LEE sent information about birth mother Jane Doe 6 to her network of adoption contacts. The opportunity said that Jane Doe 6 had an estimated due date of March 1, 2019, and that Jane Doe 6 had come to LEE "as a referral from another expectant mother."

In or about October 2018, LEE told prospective adoptive parents A.P. and C.P. that Jane Doe 6 had chosen them to adopt her baby. LEE requested and received payment from A.P. and C.P. On or about October 3, 2018, A.P. and C.P. paid LEE $15,000 by providing her with their credit card numbers over the phone. LEE also provided A.P. with a photograph of Jane Doe 6. On or about October 4, 2018, A.P. contacted LEE and withdrew from the match with Jane Doe 6 because she had found Jane Doe 6's Facebook profile and it was clear to A.P. that Jane Doe 6 did not intend to place her child into adoption.

After A.P. withdrew from the match with Jane Doe 6, LEE sent Jane Doe 6's opportunity to her network of adoption contacts, looking to re-match Jane Doe 6. On or about October 31, 2018, LEE told prospective adoptive parents H.C. and M.C. that Jane Doe 6 had chosen them to adopt her baby. LEE requested and received payment from H.C. and M.C. On or about October 31, 2018 and November 5, 2018, H.C. and M.C. paid LEE a total of $15,000.

In truth and in fact, Jane Doe 6 was pregnant in 2018. Jane Doe 6 did not tell LEE that she wanted to place her child into adoption. Jane Doe 6 did not select A.P./C.P. or H.C./M.C. as adoptive parents for her child.

**Jane Doe 7: Fraudulent Match**

In or about October 2018, LEE sent information about birth mother Jane Doe 7 to her network of adoption contacts. The opportunity said that Jane Doe 7 had an estimated due date of March 17, 2019, and that Jane Doe 7 came to LEE "as a referral from another expectant mother."

In or about October 2018, LEE told prospective adoptive parents H.B. and J.B.2 that Jane Doe 7 had chosen them to adopt her baby. LEE requested and received payment from H.B. and J.B.2. On or about October 21, 23, 24, and 25, 2018, H.B. and J.B.2 paid LEE $13,000 by providing her with their credit card numbers over the phone.

In truth and in fact, prior to accepting payment from H.B. and J.B.2, LEE had never met with Jane Doe 7, had not confirmed that she was pregnant, and had not determined that she wanted to work with LEE to place her child into adoption.

**Jane Doe 8: Double Match**

In or about April 2018, LEE sent information about birth mother Jane Doe 8 to prospective adoptive parent E.J. LEE sent a photograph of Jane Doe 8 to E.J;

E.J. told LEE she was interested in adopting Jane Doe 8's baby. LEE requested and received payment from E.J. On or about April 23, 2018, E.J. paid $13,300 to LEE for her match with Jane Doe 8.

In or about May 2018, LEE sent information about birth mother Jane Doe 8 to prospective adoptive parents K.T. and A.T.; K.T. and A.T. told LEE they were interested in adopting Jane Doe 8's baby. LEE requested and received payment from K.T. and A.T. On or about May 13, 2018, K.T. paid LEE $15,000 to LEE for their match with Jane Doe 8.

**Jane Doe 9: Fraudulent Match**

In or about June 2018, LEE sent information about birth mother Jane Doe 9 to her network of adoption contacts. The opportunity said that Jane Doe 9 had an estimated due date of November 28, 2018, and that Jane Doe 9 and her boyfriend were "working very hard on their sobriety and just got their son back after he was in CPS care."

On or about June 8, 2018, LEE informed prospective adoptive parents H.B.2 and C.B. that Jane Doe 9 had chosen them to adopt her baby. LEE requested and received payment from H.B.2 and C.B. On or about June 9, 2018, H.B.2 and C.B. paid LEE $19,000 by providing her with credit card numbers over the phone.

In truth and in fact, Jane Doe 9 was not pregnant in June 2018 and was not aware that LEE had "matched" her with H.B.2 and C.B. LEE had no reason to

believe that Jane Doe 9 was pregnant and interested in placing a child into adoption.

## "Devein": Fraudulent Match

In or about August 2018, LEE sent information about birth mother "Devein" to her network of adoption contacts. Prospective adoptive parents A.R. and J.R. told LEE they were interested in adopting Devein's baby. LEE told A.R. and J.R. that Devein had chosen them to adopt her baby; LEE requested payment. On or about August 15, 2018, A.R. and J.R. paid $15,000 to LEE by providing her with credit card information over the phone.

On or about August 26, 2018, LEE arranged a three-way call between A.R. and a woman that LEE told A.R. was Devein. The phone call lasted for approximately seven minutes. In truth and in fact, LEE had another woman, who was not pregnant, impersonate Devein during the phone call with A.R.

On or about October 28, 2018, LEE sent A.R. a photograph depicting a pregnant woman from the neck down. The photograph was accompanied with the text: "I had d over for dinner tonight," and "There's your baby." In truth and in fact, the photograph that LEE sent to A.R. depicts another pregnant woman that LEE had matched to another couple.

3.    **Sentence**

The Court will impose a sentence pursuant to 18 U.S.C. § 3553, and in doing so must consider the sentencing guideline range.

A.    **Imprisonment**

Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the sentence of imprisonment in this case may not exceed the top of the sentencing guideline range as determined by Paragraph 2B.

B.    **Supervised Release**

A term of supervised release, if imposed, follows the term of imprisonment. There is no agreement on supervised release. In other words, the Court may impose any term of supervised release up to the statutory maximum term, which in this case is up to 3 years. The agreement concerning imprisonment described above in Paragraph 3A does not apply to any term of imprisonment that results from any later revocation of supervised release.

C.    **Special Assessment**

Defendant will pay a special assessment of $200.00 at the time of sentencing.

D.    **Fine**

There is no agreement as to fines.

- 14 -

E.     **Restitution**

The Court shall order restitution to every identifiable victim of defendant's offense and all other relevant conduct.

Defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and 3613. If the Court imposes a schedule of payments, defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

Defendant agrees to make a full pre-sentence disclosure of her financial status to the United States Attorney's Office by completing a Financial Disclosure Form and the accompanying releases for the purpose of determining her ability to pay restitution. Defendant agrees to complete and return the Financial Disclosure Form within three (3) weeks of receiving it from Government counsel. Defendant agrees to participate in a pre-sentencing debtor's examination if requested to do so by Government counsel.

4.     **Forfeiture**

Under Fed.R.Crim.P. 32.2, 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), defendant agrees to forfeit to the United States any and all property, real

or personal, which constitutes proceeds obtained or derived, directly or indirectly, from the adoption fraud scheme that resulted in the charges contained in the Indictment. In support of this agreement, defendant acknowledges that she personally obtained at least $266,750.00 in criminal proceeds from the adoption fraud scheme. Defendant agrees to the entry of a $266,750.00 forfeiture money judgment against her, in favor of the United States (the "Money Judgment").

Defendant further agrees that she used a portion of the criminal proceeds that she obtained to make payments on real property located at 30370 Redford, New Haven, MI 48048 (the "Real Property") and more specifically described as:

> Lot 45, Weathervane Woods Subdivision, according to the plat thereof as recorded in Liber 161, Pages 17 through 21, both inclusive of Plats, Macomb County Records.

> Parcel ID No.: 06-28-301-032

Defendant agrees to forfeit any interest she may have in the Real Property and/or to forfeit any interest she may have in net proceeds derived from any sale of the Real Property by any person or entity as direct proceeds traceable to her adoption fraud scheme. The United States agrees that any net proceeds derived from forfeiture and sale of the Real Property, after resolving any third party claims, shall be credited against the $266,750.00 forfeiture money judgment.

Following entry of this Rule 11 Agreement, defendant agrees to the Court's prompt entry of one or more orders of forfeiture in this action. Defendant agrees to

sign a Stipulated Preliminary Order of Forfeiture agreeing to the Money Judgment and forfeiture of the Real Property and/or the net proceeds derived from any sale of the Real Property at her Rule 11 plea hearing, or within two weeks of that hearing. Defendant agrees that the forfeiture order shall be final and effective as to her interests upon entry.

Defendant agrees that the Money Judgment may be satisfied from any property owned by defendant or under her control. Defendant explicitly agrees to the forfeiture of substitute assets under 21 U.S.C. § 853(p)(2) and waives and relinquishes her right to oppose the forfeiture of substitute assets under 21 U.S.C. § 853(p)(1) or otherwise.

Defendant will cooperate with the United States in connection with its efforts to identify, locate, seize, and forfeit property that is subject to forfeiture under this agreement. Defendant agrees that she will cooperate with the United States by taking whatever steps are necessary to deliver possession of, and clear title to, any property that is forfeitable to the United States under this agreement and will execute any legal documents required to abandon and/or forfeit her interest in such property. Defendant will take whatever steps are necessary to ensure that any forfeitable assets are not sold, disbursed, hidden, wasted or otherwise made unavailable.

Government counsel agrees to submit a request to the U.S. Department of Justice, Criminal Division, Money Laundering and Asset Recovery Section ("MLARS"), to remit or restore any forfeited assets to the victims in this case and apply the forfeited assets to defendant's restitution obligation. Defendant expressly acknowledges that any request to remit or restore forfeited funds may be denied by MLARS, which denial will not be subject to further review, and that no representations have been made to her by or on behalf of the U.S. Attorney's Office as to the likelihood that the request to MLARS will be granted.

Defendant knowingly, voluntarily, and intelligently waives all constitutional and statutory challenges to any forfeiture carried out in accordance with this plea agreement, in any form and on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Excessive Fines Clause of the Eighth Amendment.

Defendant acknowledges that she understands that forfeiture is part of the sentence that may be imposed on her in this case and waives her right to challenge any failure by the Court to advise her of this, pursuant to Rule 11(b)(1)(J), or otherwise, at the time her guilty plea is accepted. Defendant further waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of forfeiture in the charging instrument, pronouncement of forfeiture at

sentencing, and incorporation of forfeiture in the judgment and waives any right she may have to request a jury determine the forfeitability of the Real Property.

**5.    Use of Withdrawn Guilty Plea**

If the Court allows defendant to withdraw her guilty plea for a "fair and just reason" pursuant to Fed. R. Crim. P. 11(d)(2)(B), defendant waives her rights under Fed. R. Evid. 410, and the government may use her guilty plea, any statement made under oath at the change-of-plea hearing, and the factual basis statement in this plea agreement, against her in any proceeding.

**6.    Each Party's Right to Withdraw from This Agreement**

The Court is not required to sentence Defendant within the advisory guideline range calculated by the parties in Part 3 of the agreement. Defendant has no right to withdraw her guilty plea and the parties have no right to withdraw from this agreement if the Court decides not to sentence within the advisory guideline range.

**7.    Appeal Waiver**

Defendant waives any right she may have to appeal her conviction on any grounds. If the sentence imposed does not exceed the high end of the applicable sentencing guideline range, the defendant also waives any right she may have to appeal her sentence, including any restitution order, on any ground.

This waiver does not bar filing a claim of ineffective assistance of counsel in court.

## 8.    Consequences of Withdrawal of Guilty Pleas or Vacation of Convictions

If defendant is allowed to withdraw her guilty plea(s) or if any conviction entered pursuant to this agreement is vacated, the Court shall, on the government's request, reinstate any charges that were dismissed as part of this agreement. If additional charges are filed against defendant within six months after the date the order vacating defendant's conviction or allowing her to withdraw her guilty plea(s) becomes final, which charges relate directly or indirectly to the conduct underlying the guilty plea(s) or to any conduct reflected in the attached worksheets, defendant waives her right to challenge the additional charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

## 9.    Remaining/Additional Charges

If the Court accepts this agreement, the government will dismiss the remaining counts in the Indictment.

## 10.    Collateral Consequences of Conviction

Defendant understands that her conviction(s) here may carry additional consequences under federal and state law, including the potential loss of the right to vote, right to carry a firearm, right to serve on a jury, and ability to hold certain

licenses or to be employed in certain fields. Defendant further understands that, if she is not a native-born citizen of the United States, there may be adverse immigration consequences resulting from conviction. These include possible removal from the United States, denial of citizenship, denaturalization, denied admission to the United States in the future and other possible consequences. Defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty the effect of defendant's conviction on any of these matters. Defendant nevertheless affirms that she chooses to plead guilty regardless of any immigration consequences or other collateral consequences of her conviction.

## 11. Parties to Plea Agreement

Unless otherwise indicated, this agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

## 12. Scope of Plea Agreement

This agreement, which includes all documents that it explicitly incorporates, is the complete agreement between the parties. This agreement supersedes all other promises, representations, understandings and agreements between the parties concerning the subject matter of this plea agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made

by the government to defendant or to the attorney for the defendant at any time before defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this agreement.

Notwithstanding the previous paragraph, if defendant has entered into a proffer agreement in writing or a cooperation agreement in writing with the government, this plea agreement does not supersede or abrogate the terms of any such prior written agreement.

This agreement also does not prevent any civil or administrative actions against defendant, or any forfeiture claim against any property, by the United States or any other party.

13.    **Acceptance of Agreement by Defendant**

This plea offer expires unless it has been received, fully signed, in the Office

of the United States Attorney by 5:00 P.M. on 07/23/2019. The government

reserves the right to modify or revoke this offer at any time before defendant

pleads guilty.

MATTHEW SCHNEIDER
United States Attorney


John K. Neal                                    Sara D. Woodward
Assistant United States Attorney                Assistant United States Attorney
Chief, White Collar Crimes

Date: 06/28/2019

By signing below, defendant acknowledges that she has read (or been read) this
entire document, understands it, and agrees to its terms. She also acknowledges
that she is satisfied with her attorney's advice and representation. Defendant agrees
that she has had a full and complete opportunity to confer with her lawyer, and has
had all of her questions answered by her lawyer.


Sanford Schulman                                Tara Lynn Lee
Attorney for Defendant                          Defendant

8.20.2019                                       8-20-19
Date                                            Date

- 23 -

## WORKSHEET A
# OFFENSE LEVEL

Defendant **TARA LYNN LEE**　　　　　　　　　District/Office **Eastern District of Michigan**

Docket Number **19-20128**

Count Number(s) **4**　　　　　U.S. Code Title & Section **18** : U.S.C. **1343** : ____ :

*Guidelines Manual* Edition Used: 20**18** *(Note: The Worksheets are keyed to the November 1, 2016 Guidelines Manual)*

### INSTRUCTIONS

Complete a separate Worksheet A for each count of conviction or as required in a situation listed at the bottom of Worksheet B.*
*Exceptions*: Use only a single Worksheet A where the offense level for a group of closely related counts is based primarily on aggregate value or quantity (*see* §3D1.2(d)) or where a count of conspiracy, solicitation, or attempt is grouped with a substantive count that was the sole object of the conspiracy, solicitation, or attempt (*see* §3D1.2(a) & (b)).

### 1. Offense Level (*See* Chapter Two)

Enter the applicable base offense level and any specific offense characteristics from Chapter Two and explain the bases for these determinations. Enter the sum in the box provided.

| Guideline | Description | Level |
|---|---|---|
| 2B1.1(a)(1) | Offense involving fraud punishable by up to 20 years; base offense level | 7 |
| 2B1.1(b)(1)(G | Loss exceeded $250,000 | +12 |
| 2B1.1(b)(2)(B) | Offense caused substantial financial hardship to 5 or more victims | +4 |
| 2B1.1(b)(9) | Offense involved violation of prior, specific judicial or administrative order, decree | +2 |
| 2B1.1(b)(10) | Offense involved sophisticated means | +2 |

If the Chapter Two guideline requires application of a cross reference or other reference, an additional Worksheet A may be needed for that analysis. *See* §1B1.5.　　Sum **27**

### 2. Victim-Related Adjustments (*See* Chapter Three, Part A)

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".　　§ **3A1.1(b)(1)** **4**

### 3. Role in the Offense Adjustments (*See* Chapter Three, Part B)

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If the adjustment reduces the offense level, enter a minus (–) sign in front of the adjustment. If no adjustment is applicable, enter "0".　　§ **3B1.1** **2**

### 4. Obstruction Adjustments (*See* Chapter Three, Part C)

Enter the applicable section and adjustment. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".　　§_____ **0**

### 5. Adjusted Offense Level

Enter the sum of Items 1–4. If this Worksheet A does not cover all counts of conviction or situations listed at the bottom of Worksheet B, complete Worksheet B. Otherwise, enter this result on Worksheet D, Item 1.　　**33**

☐　Check here if **all** counts (*including* situations listed at the bottom of Worksheet B)* are addressed on this one Worksheet A. If so, no Worksheet B is used.

☐　If the defendant has no criminal history, enter "I" here and on Worksheet D, Item 4. No Worksheet C is used.

## WORKSHEET C
# CRIMINAL HISTORY
### [Page 1 of 2]

Defendant __TARA LYNN LEE__                    Docket Number __19-20128__

> *Note:* As an aid, some of the basic criminal history "rules" are listed below. However, there are numerous additional criminal history rules at §§4A1.1 and 4A1.2 that must be used with Worksheet C and for correct application.

### Enter the Earliest Date of the Defendant's Relevant Conduct __January 2014__
(The date of *the defendant's commencement of the instant offense*(s))

### 1.  Prior Sentences Resulting from Offenses Committed Prior to the Defendant's 18th Birthday

(a) **3 Points** if convicted as an *adult*, for each prior sentence of imprisonment *exceeding one year and one month* imposed within 15 years of the defendant's earliest date of relevant conduct or resulting in incarceration during any part of that 15-year period. *See* §§4A1.1(a) and 4A1.2(d)(1) & (e)(1).

(b) **2 Points** for each prior *adult or juvenile sentence* of confinement of *at least 60 days* not counted under §4A1.1(a) imposed within 5 years or from which the defendant was released from confinement within 5 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(b) and 4A1.2(d)(2)(A).

(c) **1 Point** for each prior *adult or juvenile sentence* not counted under §4A1.1(a) or §4A1.1(b) imposed within 5 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(c) and 4A1.2(d)(2)(B).

*Note:* Identify as "**adult**" any sentence exceeding one year and one month that resulted from an adult conviction.

A **release date** is required in only two instances: (1) when a sentence covered under §4A1.1(a) was imposed more than 15 years prior to *the defendant's earliest date of relevant conduct* but resulted in the defendant being incarcerated during any part of such 15-year period; or (2) when a sentence counted under §4A1.1(b) was imposed more than 5 years prior to *the defendant's earliest date of relevant conduct*, but release from confinement occurred within such 5-year period.

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### 2.  Prior Sentences Resulting from Offenses Committed On or After the Defendant's 18th Birthday

(a) **3 Points** for each prior sentence of imprisonment *exceeding one year and one month* imposed within 15 years of the defendant's earliest date of relevant conduct or resulting in incarceration during any part of that 15-year period. *See* §§4A1.1(a) and 4A1.2(e)(1).

(b) **2 Points** for each prior sentence of imprisonment of *at least 60 days* not counted under §4A1.1(a) imposed within 10 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(b) and 4A1.2(e)(2).

(c) **1 Point** for each prior sentence not counted under §4A1.1(a) or §4A1.1(b) imposed within 10 years of the defendant's earliest date of relevant conduct. *See* §§4A1.1(c) and 4A1.2(e)(2).

*Note:* A **release date** is required when a sentence covered under §4A1.1(a) was imposed more than 15 years prior to *the defendant's earliest date of relevant conduct* but resulted in the defendant being incarcerated during any part of such 15-year period.

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| 9/13/2005 | non-sufficient funds | 2 years probation | 2/11/2009 | | 0 |
| 1/3/2006 | Ordinance violation; traffic | fines and costs | | | 0 |
| 2/24/2006 | non-sufficient funds | probation | 1/15/2009 | | 0 |
| | | | | | |

# Worksheet C — Criminal History [Page 2 of 2]

Defendant __TARA LYNN LEE__ Docket Number __19-20128__

(continued from *Sentences Resulting from Offenses Committed On or After the Defendant's 18th Birthday*)

| Date of Imposition | Offense | Sentence | Release Date | Guideline Section | Criminal History Points |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

### 3. Sum of Criminal History Points for prior sentences under §4A1.1(a), (b), & (c) in Items 1 & 2

A total of 4 points can be added for all the 1-Point sentences counted in Items 1 & 2 combined.

### 4. "Status" of Defendant at Time of Instant Offense

**2 Points** for "status" if the defendant committed any part of the instant offense (*i.e.*, any relevant conduct) while under any criminal justice sentence (*e.g.*, probation, parole, supervised release, imprisonment, work release, or escape status) for a sentence counted in Items 1 or 2. *See* §4A1.1(d) and Application Note 4. List the type of control and identify the counted sentence that resulted in the control. Otherwise, enter **0 Points**.

0

### 5. Crimes of Violence

**1 Point** for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under §4A1.1(a), (b), or (c) because such sentence was counted as a single sentence which also included another sentence resulting from a conviction for a crime of violence. A total of 3 points can be added under this subsection. *See* §4A1.1(e) and Application Note 5, and §4A1.2(a)(2) & (p). Identify the crimes of violence and briefly explain why the cases are considered a single sentence. Otherwise, enter **0 Points**.

### 4. Total Criminal History Points (Sum of Items 3–5)

0

### 5. Criminal History Category (Enter here and on Worksheet D, Item 4)

| Total Points | Criminal History Category |
|---|---|
| 0–1 | I |
| 2–3 | II |
| 4–6 | III |
| 7–9 | IV |
| 10–12 | V |
| 13 or more | VI |

I

## WORKSHEET D
# DETERMINING THE SENTENCE
### [Page 1 of 4]

Defendant **TARA LYNN LEE**                              Docket Number **19-20128**

---

1. **Adjusted Offense Level** (From Worksheet A or B)
   If Worksheet B is required, enter the result from Worksheet B, Item 9. Otherwise, enter the result from Worksheet A, Item 5.                                      **33**

2. **Acceptance of Responsibility** (See Chapter Three, Part E)
   Enter the applicable reduction of **2** or **3** levels. If no adjustment is applicable, enter "0".       **– 3**

3. **Offense Level Total** (Item 1 less Item 2)
                                                                                              **30**

4. **Criminal History Category** (From Worksheet A or C)
   Enter the result from Worksheet C, Item 8, unless the defendant has no criminal history, and as directed at the bottom of Worksheet A, no Worksheet C is used and "I" is entered here.          **I**

5. **Terrorism; Career Offender; Criminal Livelihood; Armed Career Criminal; Repeat and Dangerous Sex Offender** (See Chapter Three, Part A, and Chapter Four, Part B)

   a. **Offense Level Total**
      If the provision for Career Offender (§4B1.1), Criminal Livelihood (§4B1.3), Armed Career Criminal (§4B1.4), or Repeat and Dangerous Sex Offender (§4B1.5) results in an offense level total higher than Item 3, enter the offense level total. Otherwise, enter "N/A".

   b. **Criminal History Category**
      If the provision for Terrorism (§3A1.4), Career Offender (§4B1.1), Armed Career Criminal (§4B1.4), or Repeat and Dangerous Sex Offender (§4B1.5) results in a criminal history category higher than Item 4, enter the applicable criminal history category. Otherwise, enter "N/A".

6. **Guideline Range from Sentencing Table**
   Enter the applicable guideline range from Chapter Five, Part A, in months.          **97** **to** **121**

7. **Restricted Guideline Range** (See Chapter Five, Part G)
   If the statutorily authorized maximum sentence or the statutorily required minimum sentence restricts the guideline range (Item 6) (see §§5G1.1 and 5G1.2), enter either the restricted guideline range or any statutory maximum or minimum penalty that would modify the guideline range. Otherwise, enter "N/A".          **to**

   ☐ Check here if §5C1.2 (Limitation on Applicability of Statutory Minimum Penalties in Certain Cases) and 18 U.S.C. § 3553(e) – "The Safety Valve" – are applicable.

8. **Undischarged Term of Imprisonment; Anticipated State Term of Imprisonment** (See §5G1.3)

   ☐ If the defendant is subject to an undischarged term of imprisonment, or an anticipated state term of imprisonment, check this box. Below list the undischarged/anticipated term(s), the applicable section of §5G1.3 and its direction or guidance as to whether the instant federal sentence is to be imposed to run concurrently or consecutively to the undischarged/anticipated term(s), and any sentence adjustment.

---
---
---

# Worksheet D — Determining the Sentence [Page 2 of 4]

Defendant  TARA LYNN LEE                          Docket Number  19-20128

---

**9. Sentencing Options** (See Chapter Five, Sentencing Table and §§5B1.1(a) and 5C1.1)

Check the applicable box that corresponds to the Guideline Range entered in Item 6 or Item 7, if applicable.

☐ **Zone A** (See §§5B1.1(a)(1) & 5C1.1(a) & (b))

If checked, the following options are available:

- Fine (See §§5C1.1(b) & 5E1.2(a))
- "Straight" Probation (See §§5B1.1(a)(1) & 5C1.1(b))
- Imprisonment (See §5C1.1(a) & (c)(1))

☐ **Zone B** (See §§5B1.1(a)(2) & 5C1.1(a) & (c))

If checked, *the minimum term may be satisfied by*:

- Imprisonment (See §5C1.1(a) & (c)(2))
- Imprisonment of *at least one month plus supervised release* with a condition that substitutes community confinement or home detention for imprisonment (See §5C1.1(c)(2))
- Probation with a condition that substitutes intermittent confinement, community confinement, or home detention for imprisonment (See §§5B1.1(a)(2) and 5C1.1(c)(3))

☐ **Zone C** (See §5C1.1(a) & (d))

If checked, *the minimum term may be satisfied by*:

- Imprisonment (See §5C1.1(a) & (d)(1))
- Imprisonment of *at least one-half of the minimum term plus supervised release* with a condition that substitutes community confinement or home detention for imprisonment (See §5C1.1(d)(2))

☑ **Zone D** (See §5C1.1(a) & (f))

If checked, *the minimum term is to be satisfied by* a sentence of imprisonment

---

**10. Length of Term of Probation** (See §5B1.2)

If probation is imposed, the guideline for the length of such term of probation is: (Check the applicable box)

☐ At least one year, but not more than five years if the offense level total is 6 or greater.

☐ No more than three years if the offense level total is 5 or less.

# Worksheet D — Determining the Sentence [Page 3 of 4]

Defendant _TARA LYNN LEE_                                   Docket Number _19-20128_

## 11. Supervised Release (See §§5D1.1 and 5D1.2)

**a. Imposition of a Term of Supervised Release:**

☐ Ordered because required by statute (See §5D1.1(a)(1)).

☑ Ordered because a sentence of imprisonment of more than one year is imposed (See §5D1.1(a)(2)).

☐ Is **not** ordered although a sentence of more than one year is imposed, because it is not required by statute **and** the defendant likely will be deported after imprisonment (See §5D1.1(c)).

☐ Ordered because it may be ordered in any other case (See §5D1.1(b)).

**b. Length of Term of Supervised Release**

Check the Class of the Offense:

☐ Class A or B Felony: Two to Five Year Term (See §5D1.2(a)(1))

☑ Class C or D Felony: One to Three Year Term (See §5D1.2(a)(2))

☐ Class E Felony or Class A Misdemeanor: One Year Term (See §5D1.2(a)(3))

☐ If a statutorily required mandatory minimum term of supervised release for the offense impacts the guideline range for the applicable Class of Offense above, also check this box, and list the statutory minimum term (See §5D1.2(c)):

_____ years mandatory minimum term of supervised release

☐ If an offense in 18 U.S.C. § 2332b(g)(5)(B) that resulted in, or created a foreseeable risk of, death or serious bodily injury to another person; or if a sex offense, the term of supervised release will not be less than the minimum term established above, and may be up to life (See §5D1.2(b)).

Policy Statement: If a sex offense, the *statutory maximum term* of supervised release is recommended.

## 12. Restitution (See §5E1.1)

a. If restitution is applicable, enter the amount. Otherwise enter "N/A" and the reason:
The Court must order full restitution to the victims of the offenses of conviction and relevant conduct.

The Court will determine who the victims are and their restitution amounts.

b. Enter whether restitution is statutorily mandatory or discretionary:
Restitution is mandatory.

c. Enter whether restitution is by an order of restitution, or **solely** as a condition of supervision. Enter the authorizing statute:

_____

# Worksheet D — Determining the Sentence [Page 4 of 4]

Defendant **TARA LYNN LEE**                    Docket Number **19-20128**

## 13. Fines (The Guideline Range for Fines for Individual Defendants) (See §5E1.2)

|  |  | Minimum | Maximum |
|---|---|---|---|
| **a.** | **Special Fine Provisions** | | |
| | ☐ Check box if any of the counts of conviction is for a statute with a special fine provision. (This ***does not*** include the general fine provisions of 18 USC § 3571(b)(2) & (d)). | | |
| | Enter the sum of statutory maximum fines for all such counts. | | $250,000 |
| **b.** | **Fine Table (§5E1.2(c)(3))** | | |
| | Enter the minimum and maximum fines. | $30,000 | $300,000 |
| **c.** | **Fine Guideline Range** | | |
| | (Determined by the minimum of the Fine Table (Item 13(b)) and the greater maximum above (Item 13(a) or 13(b))). | $30,000 | $250,000 |
| **d.** | **Ability to Pay** | | |
| | ☐ Check this box if the defendant does not have an ability to pay. | | |

## 14. Special Assessments for Individual Defendants (See §5E1.3)

Enter the total amount of the statutory special assessments required for all counts of conviction:
- $100 for each felony count of conviction.
- $25 for each Class A misdemeanor count of conviction.
- While not subject to guideline sentencing, the special assessments for a Class B misdemeanor, and a Class C misdemeanor or infraction are $10 and $5 per count, respectively.

**TOTAL:**          $200

## 15. Factors That May Warrant a *Departure* (See §1B1.1(b))

Consider Chapter Five, Part H (Specific Offender Characteristics) and Part K (Departures), and other policy statements and commentary in the *Guidelines Manual* that might warrant consideration in sentencing. (*See also* the "List of Departure Provisions" included in the *Guidelines Manual* after the Index).

_____
_____
_____
_____

## 16. Factors That May Warrant a *Variance* (See §1B1.1(c))

Consider the applicable factors in 18 U.S.C. § 3553(a) taken as a whole.

_____
_____
_____
_____

**Completed by** Sara Woodward                    **Date** June 28, 2019